Thank you, Your Honor. May it please the Court. My name is Jamie Santos, and I am pro bono counsel for the appellant Raymond Bullette. We've presented two grounds for appeal in our briefs, a sentencing issue and a suppression issue. With respect to the sentencing issue, we rest on our briefs and simply note that we agree with what this Court said in U.S. v. McDowell that Almendarez-Torres seems inconsistent with the Supreme Court's more recent Sixth Amendment case law. With respect to the suppression issue, this is a case in which law enforcement agents never considered whether there was probable cause before conducting a warrantless automobile search, and the government has tried to make up for this failure with post hoc justifications that have been a moving target since Mr. Bullette's motion to suppress was filed. Because this was a warrantless search, the government had the burden of proving that an exception to the warrant requirement applied, and when the government failed to present sufficient evidence to satisfy any exception, the District Court filled in the gaps to find, to conclude that three exceptions applied, officer safety exception, the automobile exception, and the inventory search exception. This Court reviews each of these conclusions de novo, and each is incorrect. First... Can you have standing to object to the search? Well, Your Honor, the government did not raise the standing issue before. Can we not consider it? No, Your Honor. This Court, of course, can consider anything. I will note that Fourth Amendment standing is not a jurisdictional issue, and in a virtually identical case, United States v. Powell, where the government presented Fourth Amendment standing before the District Court and did not do so in its briefs before this Court, this Court held that it was forfeited. However, I'm happy to address that issue. Mr. Ballett does have standing to challenge the unlawful search of the Pontiac. Mr. Ballett was an authorized user of the Pontiac. In the record, there are surveillance videos of Mr. Ballett driving the Pontiac on the day in question. His mail and his court records were found in the vehicle, as well as vehicle service records with his name on it. And in U.S. v. Russia, this Court held that when there is a driver, when an individual is driving a vehicle, the government bears the burden of proving that that individual was not an authorized driver. Thank you. Yes. Thank you, Your Honor. So the respect to the officer safety rationale, like Fourth Amendment standing, that issue is waived. It was not raised in the government's briefs here. In an event, there's no evidence demonstrating a compelling need to search the vehicle or an inability to get a warrant in the six hours that elapsed from the time officers entered the property and searched the vehicle. With respect to the automobile exception, the government failed to prove that at the moment Agent Willie opened the car door to the Pontiac, he knew enough facts to reasonably believe that the Pontiac would contain contraband. Geographic proximity to a suspected PCP lab and the presence of two bottles of a common household cleaning product do not, as the government contends, give rise to probable cause, simply because the liquid in the bottles could have been replaced with contraband. Okay, but the car was parked there, and the vehicle had apparently been abandoned. Somebody had been eating some food and left it on the hood of the trunk of the car, suggesting flight, a hasty departure. And the police officers understood that a component part of PCP is an amber-colored liquid, so that could have been in the Pine-Sol bottle, although it ultimately was not. Why isn't that enough? Well, Your Honor, let me first address the flight abandonment issue, and then I would like to address the Pine-Sol issue, unless you'd prefer I do it in another order. No, by all means do, but I also have the question I'm taking altogether. Your response was indicating that you intended to address them individually, and I also want you to address their impact as a whole. Absolutely. It's the collective knowledge of the police, not individual items. Yes, Your Honor, well, let me first address collective knowledge, because... No, no, the item was taken as a whole. Yeah, absolutely. Okay, so not the collective knowledge doctrine you were speaking of. Okay, so I would first like to address abandonment. The government suggests that the existence of food on the vehicle and footprints was indicative of a mid-meal flight, which contributes to probable cause to search the vehicle. But this is incorrect for two reasons. First, abandonment is an issue that's reviewed by this court, DeNovo, and U.S. v. Stevenson, this court held. And in every case in which there has been deemed abandonment or flight has contributed to probable cause, in every case we've uncovered, an individual has actually observed occupants of a vehicle fleeing the scene. In U.S. v. Curlow, for example, an officer personally observed the occupant of a vehicle jumping out of the vehicle while it was continuing down the street and running away. You would be allowed to observe, at least at the moment, you're doing exactly what I, for one, hope you would not be doing, and that is looking at it piece by piece. So is that in route to bringing together the impact of this collective body of evidence? Absolutely, Your Honor. Rest assured, I will not let you down. So perhaps a more important point about this flight finding or this flight determination is that in determining that there was flight and in arguing that there was flight, the government and the district court has relied upon evidence that was not known to Agent Willie at the time the search took place. The two fundamental principles of determining probable cause are, first, that probable cause determination can only depend on evidence that is known to the officer at the time the search takes place and not to any other officer on the scene. And the footprint evidence that the district court relied upon was not known to Agent Willie. If you look at page 107 and 108 of the joint appendix, Agent Willie was asked about the footprints, and he said that when he arrived on the scene, he was informed that agents had found footprints and were out tracking them. But with respect to the far apart nature of the footprints, the freshness, he testified later down on the page that this was eventually determined that there were these footprints indicating flight. But isn't the real issue here, you know, that you've got a PCP lab, okay? It's in the middle of the desert, apparently on an abandoned property, with a vehicle that has no tags on it, with a rotisserie chicken, apparently still pretty much intact, I mean, partially consumed, but not affected by any animals or anything, sitting there. Why isn't this a situation that gives probable cause for criminal activity, a PCP lab in the middle of the desert with an abandoned vehicle and amber liquid in the vehicle? Well, Your Honor, and the last point you focused on was the abandonment. And just to quickly wrap that up, the determination that you really got to address the fact there's a PCP lab sitting in the middle of the desert, you're not going to get anywhere. Absolutely, Your Honor. But let me just quickly say that this abandonment determination was based largely on footprints that were not known to Agent Willie at the time he conducted the search, and therefore the only And that's part of the weakness in your argument. As your team has pointed out, there was other evidence as well. There was the uneaten, intact food. Yes, Your Honor. So if we put the footprints aside, as we must, because the government did not establish they were known, the only evidence supporting flight, Your Honor, is an entire rotisserie chicken and an entire loaf of bread that weren't eaten at one sitting. And so we submit that the evidence is too thin to support that there was actual flight from the vehicle when every other case in which there's flight contributing to probable cause involves someone personally observing someone fleeing. With respect, absolutely, we would agree this was a PCP lab and that there was a vehicle on the lab. But, Your Honors, in cases in which there was permission to search a vehicle, there was probable cause to search a vehicle, there had to be some tie between the proximity to illegal activity and the vehicle itself. Why doesn't the amber liquid provide that? If nothing else, the fact that amber liquid is a known byproduct of PCP production, and there were two bottles containing amber liquid. Yes, Your Honor. Why isn't that? Yes, Your Honor. So here this is, there are two bottles of Pine Sol, even taking into account that you don't know what the contents are. There are two bottles that, absolutely. Exactly, Your Honor. Well, Your Honor, this court has held that geographic proximity to illegal activity. You know, sometimes the citation of this authority isn't really what we're asking for. Yes, Your Honor. We're asking for you to apply the prodigious amount of case law that you have assembled in your mind to the facts that are presented and sort of directly engaged on the question. Absolutely, Your Honor. And let me say that in the cases in which an officer observed something in the vehicle that was indicative of contraband, the marijuana smell cases, seeing a baggie of cocaine, this case is far afield from those cases because you have a bottle whose contents even just facially match the label. I think this case is much more akin to the air freshener cases. No, Your Honor. For the inevitable discovery doctrine to apply, this is the inventory search exception, the government would have had the burden of proving two things, the existence of a standard impoundment policy and the existence of a standard inventory policy that would have contained standardized criteria pursuant to which a search could occur. Well, Your Honor, this is not something that Mr. Bullett had the burden of proving. This is something that the government had the burden of proving. And may I add that this is not a difficult burden to establish. It's common in U.S. v. Matthews. No, Your Honor. The only testimony that he provided... That's incorrect, Your Honor. On page 110 of the joint appendix, the only testimony that exists regarding impoundment or inventory is when Agent Willie said there was no one there to claim the vehicle, so we were going to have it impounded. That is very different from the cases in which there has been testimony that's not only discussing the existence of a policy, but dictating the ways in which that policy cabins officers' discretion. Well, that's the... The inevitable discovery doctrine is a broad doctrine. Yes, but... Your Honor, every case that we have found, U.S. v. Matthews, every case involves either an officer testimony detailing the standard procedures or the submission of the actual policy itself. And U.S. v. Brown, even though it wasn't a policy of that particular agency, the Boston Police Department's policy manual was submitted. So this is not a heavy burden to meet. The government simply had to provide evidence, and they didn't do so perhaps because this wasn't even an issue they raised in the district court. This is an... In-circuit precedent for that authority? For the principle that you have to submit a policy? Yes. Yes, Your Honor. U.S. v. Brown, U.S. v. Cartret, U.S. v. Matthews, in all of those instances, a written inventory policy and a written inventory or an impoundment policy were provided. That wasn't what I... That wasn't my question. My question was, do you have in-circuit authority for the proposition that they had to be? That's my question. Yes, Your Honor. Those cases all... Oh, that there has to be. Yes. And Colorado v. Bertine holds that as well. And, Your Honor, may I... If I can just revisit the Abercolor liquid. And those are all Fourth Circuit cases? Yes, Your Honor. Colorado v. Bertine is a Supreme Court case. The others are all Fourth Circuit cases. If I can briefly revisit the Abercolor... I thought they were involving inventory searches. Yes. However, in order to inventory a vehicle, you have to have lawfully impounded it. And so you have to prove both policies. That's what this Court said in U.S. v. Matthews. It's not an inventory search. I'm sorry, Your Honor? It's okay. Okay. So with respect to the Abercolor liquid, we submit that this case is much more similar to the air freshener cases. When you have a common household product, the household product has to be used in a suspicious way to provide probable cause to search. And so in U.S. v. Palmer, for example, there were a number... But there's no evidence that air fresheners are a component of a drug, is it? Well, Your Honor... Air fresheners are used to obscure the sensory effects of the presence of drugs. They aren't component parts of drugs. So I don't think that analogy holds up. Well, Your Honor, we're unaware of any case in which, for example, a pack of cigarettes sitting on a car in a high drug, outside of an open-air drug market, would be probable cause to search the car, simply because sometimes people replace the cigarettes with marijuana joints. What I'm saying is, here, you have a PCP. Yes, Your Honor. In this case, you have a PCP lab, and the bottles can be in the vehicle liquid. Yes, Your Honor. And we still believe that probable cause to search the vehicle has to have a tie between the illegal conduct and the vehicle. And if the only tie here... ...the existence of ammo liquid in the car near a PCP lab provides... Because, Your Honor, if you have a normal household product in normal quantities... ...not in a normal, not, emphatically not, exponentially not, in a normal situation. Absolutely. Don't you at least have to perceive that this is really normal? Absolutely, Your Honor. And we are certainly not ignoring the outward circumstances. However, I think that there still needs to be a tie from the vehicle. I've given you one. Your Honor, if it's okay with you, I'd like to reserve my time for a moment. Of course. Mr. Packard? Good morning, Your Honors. May it please the Court, Michael Packard on behalf of the government. As was laid out just a moment ago, there are two issues here. We have the sentencing issue that the appellant has raised, and we have the evidentiary issue. The government believes that the sentencing issue ought to and can be disposed of quickly by this Court, so we'll stand on our papers there. Yes. Let's go right to the evidentiary question. Yeah, it's a preservation, maybe just a preservation point. Agreed, Your Honor. So as to the question of whether or not Judge Titus erred when he denied this motion to suppress, the government submits the answer is no, that he was eminently correct on multiple bases. As Your Honors know from the record, Judge Titus denied that motion on several points, two of which the government focused on in its briefing. So those are the ones that I'll focus on now, although I'm happy to address questions about His Honor's other bases, those being abandonment and the public safety exception. Our briefing is focused on the question of the automobile exception and, as a backstop, the inevitable discovery doctrine. And if it's okay with you, I'll start with the automobile exception. The question is whether that vehicle was readily mobile and probable cause existed to believe that contraband or evidence would be found inside that car. When Judge Titus held that it was, he made a variety of factual findings, and those factual findings, as the Court knows, are entitled to very deferential, clear error review. He found that the property where the Pontiac was found was a lightly populated area being illicitly used by trespassers and was also an area where, in the past, neighbors had complained about chemical smells. He found that when the police... Could you slow down just a little bit? Certainly, Your Honor. Thank you. He found that when police responded to that area in the middle of the night, those involved in the PCP production saw the police coming and they, quote, made tracks and left everything right there. Judge Titus described this scene as the classic uncovering of an active PCP lab where everybody involved in it hit the road or made tracks in the middle of the night. He's made that same point four or five different ways in his colloquy. He also found this Pontiac had been abandoned by one of those individuals involved in the production of PCP. He described that car as, quote, an unlocked vehicle left by a person who was obviously engaged in the production of PCP who made haste to get away from being detected as to their involvement in it. He further recognized that in plain view within that Pontiac were two bottles that looked to an experienced narcotics investigator like PCP, an amber liquid. Judge Titus noted that while these were found to be innocuous, quote, you can't tell until you open the bottle, which is the point I think you made, Judge Duncan, during the appellant's piece. Given all of this, he concluded it would have been, quote, absurd for the officers not to open that car and inquire as to its contents. None of those conclusions, Your Honor, were erroneous, let alone clearly erroneous, and they provide an ample basis for the finding of probable cause to support the automobile exception. That basis is found in the testimony of DEA Special Agent Brian Willey and the various exhibits submitted to him, which also appear in the supplemental joint appendix that was presented to this Court. He testified about the gallons upon gallons of PCP production chemicals found at this shack in the middle of the desert. Indeed, some of those buckets contained PCC crystals, which, as he testified, are byproducts, parts of the PCP manufacturing process. Did you say neighbors? I mean, isn't it in the record that neighbors had complained before about the property? Absolutely, Your Honor. So how is it in the middle of the desert if there are, I mean, I don't doubt that it's in the middle of the desert, but it's not, I mean, the way you portray it is painting it as though it's in the middle of nowhere, nobody else around. Clearly there are other people around, right? There must be neighbors. So there are neighbors. It's perhaps a question of where one's from in the country. Neighbors in the city are right on top of you. Neighbors in the desert might be hundreds of yards away. They're still your neighbors, but chemical smells waft. And I think the pictures submitted in the supplemental.  Yeah, I looked at the pictures in the supplemental, and they're telling. So that's the issue. So that's the issue is that the neighbors who were there, again, at some distance. Who were somewhere around. Who were somewhere around, complained about the smell. And officers had been to the scene before and saw in a different area of the property, gallon, drums, things of that nature, that would have suggested a potential PCP operation. So they told the neighbors to call them back, which is exactly what happened on the night of this search. He also testified that after they were called that night, officers didn't exactly do what they were supposed to do, which was just check on it. Instead, those officers bounded right over, making it obvious to the bad guys that the police were coming. As those headlights came over that ridge, their logical inference, drawn by Judge Titus, is that the bad guys saw the cops coming and took off on foot into the desert. You know, your description is very colorful. If you could just stick a little closer to the language that I'm accustomed to, I would appreciate it. So there are these people who ran from what appeared to be the scene of a crime. And they may well be bad guys. And I'm probably splitting hairs. But I don't watch Westerns and I just like the more traditional terminology. Fair enough, Your Honor. My apologies. The individuals involved in producing PCP fled into the night, away from oncoming law enforcement. Contrary to what Appellant Counsel stated, Officer Willie testified that the tracks leading from the scene were in fact known to law enforcement before that search occurred. When he arrived, officers were following the tracks. And Officer Willie testified that the search did not occur until the morning when they were actually able to see things, at which point they did have an understanding of these fresh tracks, which, according to his testimony, which was unchallenged, appeared to begin with a sprint and then shift about a mile away into a different gate, more indicative of walking. In addition, there was a hat that was testified to, found along some of these tracks next to a deeper footprint, suggesting somebody fell during that headlong flight, and a backpack that was also abandoned during this headlong flight from the scene. Furthermore, the officer testified about the cars that were found, right next to this active PCP lab. One of those cars was a pickup parked next to the Pontiac at issue. That pickup's rear door was open and filled with materials, boxes, bottles, buckets. The Pontiac itself, also unlocked, was someone's half-finished midnight snack sitting on the trunk. In the front of the passenger seat, in plain view, were three cellular telephones, among other items. And in the back seat, also in plain view, he testified were those two bottles of amber liquid that looked to him like PCP. And again, as this Court knows, an experienced officer is entitled to some deference, and this is a very experienced officer. At that time, he had approaching nine years of experience with the DEA, as well as nine prior years on local law enforcement. He reasonably believed that was PCP. Reasonable to believe, whether that was PCP or not, that other evidence of criminal activity would be found in that car. Given that mountain of evidence, Your Honor, we suggest that there was clear probable cause. And we'll note that one of the cases, or perhaps the case, cited by the appellant to say there wasn't, is the Patuka decision from this Court. And we would recommend this Court find these cases bear no resemblance to each other. First, as a procedural matter, in Patuka, the District Court granted a motion to suppress, which matters because this Court views facts in the record in the light most favorable to the prevailing party. In Patuka, that's the defendant. In this case, it's the government. Second, those facts are wildly different. In Patuka, there was little more to suggest illegal activity was afoot than a driver's faulty recitation of personal information in the presence of a credit card reader and a few iPads. Here, there is nothing so threadbare. I think the Court made the point of trying to look at the circumstances in the totality, to not lose the forest for the trees, and that's exactly what we would ask the Court to do in comparing this case to Patuka and any other that the appellant might cite in support of its position. This was not a search of a routine traffic stop where a cop happened to look in the back seat, see a couple bottles of Pine Sol, and have a hunch it might be PCP. This was the search of a recently abandoned vehicle right next to a recently abandoned PCP lab in a remote desert location, gallons of chemicals related to PCP strewn about, and footprints leading from the scene into the desert. The Pontiac itself appeared to be recently occupied based upon the chicken, bread, and Doritos on its trunk, its unlocked doors, and the personal effects to include three cellular telephones in plain view on the front seat. The defendant has tried to make a point of the fact that the Pine Sol bottles turned out to just contain Pine Sol. But it turns out ex poc facto rationalizations both can't help the government and also can't help the defendant. The question is, at the time the search began, were the officers reasonable in believing those Pine Sol bottles could be PCP and that there could be evidence or contraband in that car? And the answer is yes, based on all the factors tested by Officer Wiley that I've summarized. If the Court has no further questions as to PC, I'll note that because there is probable cause and the automobile exception applies, we don't think the Court needs to go any further. But if the Court has questions, I can address the inevitable discovery doctrine too. I was interested – oh, yes. Okay, so help me with the extensive list of cases that the appellant cited for the proposition that there has to be the introduction into evidence of an impoundment policy in a case involving inevitable discovery as opposed to an inventory search. Your Honor, see, I'm on the exact point. Every single case, just reference, Brown, Matthews, Colorado v. Bertin, inventory search cases. And the question was concerning the scope and propriety of those inventory searches. I will note, however, as an officer of the Court, that there is a case that's a little closer that might be more helpful and because it's my job, I'm going to bring it to your attention. That's United States v. George, 97, F-2nd, 113, Fourth Circuit, 1992. And there, the question was whether inevitable discovery could apply to an inventory search that would have occurred later. The Court rejected the application of the inevitable discovery doctrine there under very different facts. And here's the difference. There, the question was whether a toolbox at issue in the car that was searched would have been inevitably discovered during an inventory search. And the government submits that in a situation like that where the permissible scope of inventory search is at issue, then the government would have a harder time based on the relatively thin record here. But in this circumstance, when the evidence at issue are three cell phones sitting in plain view and a couple of pieces of paper located not in any locked containers that the government's aware of, I believe that they are a combination of plain view and there may have been one or two in the glove compartment, that these items would be discovered under any inventory search. Officer Willie testified the car would have been impounded. That testimony was unchallenged. And it makes eminent sense because, as Judge Titus recognized, you cannot leave a car at an active crime scene. And, Judge Duncan, that was your point as well. It's well taken. Judge Titus also recognized that if a car is going to be impounded, it will be inventory. And while there might be cases where the scope of an inventory should matter, the government submits this isn't one of them. I thought the whole point of a standard protocol doctrine was that a standard protocol could support an inventory search. In other words, we always do it in these cases. That while it may be sufficient, I don't know that any court says that it's necessary. Are you saying that we have cases that say that it is necessary, an inventory search can never be approved without it? No, Your Honor. To make it clear, I'm not aware of a case that says, without that, then it's over. I'm not aware of that. I think usually it comes out, those policies are presented, when there are close questions. And here I don't think there was a close question. And it's true. The issue wasn't briefed at length before Judge Titus, but that doesn't mean the record he had wasn't adequate for him to make the decision he made. Unchallenged testimony by an experienced officer who, I'll make this point, was both a Federal agent with the DEA and affiliated with the Los Angeles Impact Team. That's a, has both local and Federal components. Demonstrating his familiarity, we would submit, it's implicit. He's familiar also with local procedures. And on this record, we believe it also would have been inevitably discovered. If there are no further questions, I'll have a seat. I do have a question. Given that you're hanging your head on these, the inevitable discovery and automobile exception, you must then recognize the flaws in your officer safety argument. That is, they hung around there for five hours. I think, Your Honor. They weren't, common sense would indicate, they weren't real concerned about something exploding. I think, Your Honor, the one factor that might weigh in Officer Willie's favor on that point would be, when the sun comes out in the middle of the California desert, chemicals might react differently if they're seated in a car where they're being heated. And perhaps that would be an impetus. Is that what he said? Because that would sound very disingenuous. It is not what he said. And just based on the record, if we are looking at the factual findings in the light most favorable to the prevailing party, that's the best inference I can present to you. That doesn't make any sense. I just wanted to. And certainly, it's not our best argument, which is why I believe it was not briefed. Actually, I would leave a bottle of wine in a car overnight. I would never leave a bottle of wine anywhere. Well, I can't conceive of that either, but what I'm saying is it would be far less at risk. Right. This is interesting. Far less at risk overnight when it's cool than during the day if the temperature goes up. Thank you very much.  Thank you, Your Honor. Thank you, Your Honors. Briefly to address one point, because I think there may be confusion. The inevitable discovery doctrine only applies if there could have been an inventory search, and the inventory search exception only applies if there were standard policies in place. With respect to the probable cause. You can have an inventory search without having standard protocols. I mean, as a protective measure, as a liability measure against claims against property, virtually every police department has them. But why, as a matter of law, do you have to have evidence of a protocol to support an inevitable discovery argument? Because, Your Honor, the inventory exception is meant to, the requirements of showing a standard policy, is meant to separate cases of suspicionless rummaging from cases in which there's an administrative search that happens the same way in every case. To be sure, there need not be a written policy, but there at least must be a standardized protocol to ensure that officers, this Court has said before, don't use the inventory exception as a ruse to rummage for evidence. As a fishing expedition. Exactly, Your Honor. Is there a realistic argument here that this could have been used as a fishing expedition? Well, Your Honor, certainly with respect to the glove box, the policy that you'd have to prove would have to require or allow the officers to search the glove box, and there are policies that don't allow that. But if I may move back to probable cause very briefly, we note that the government provided a variety of evidence to support flight and probable cause that they failed to establish were known to Agent Willie. The stage two crystals, the footprints, the backpack, the hat, and they failed to establish a timeline in the district court. And may I say that demonstrating a timeline to prove probable cause is not a difficult thing. It happens all the time. The officer asks, why did you conduct the search? And the agent says, because I had probable cause, and here are the facts that I knew. If the motion had been denied, it would be one thing, but you didn't. And so we're reading that evidence in the light most favorable to the government, aren't we? Yes, Your Honor, but that means that if there's disputed evidence, it has to be taken in the government's favor, not that the evidence can be filled in with facts that weren't in the record. And, Your Honor, here on page 110 of the joint appendix, the government counsel asked Agent Willie, why did you conduct this search? And he said three reasons. First, because no one was there to claim the vehicle, so we were going to abound it. Second, because we didn't know what would be in there. There might be ether. There might be magnesium casings. And third, because he wanted to know who the registered owner was. None of those things constitute probable cause. There was no mention of Pine Sol. And because Agent Willie never even considered whether there was probable cause to search the vehicle, it is no surprise that the government could not establish a timeline of what he knew and when. Now, my friend on the other side said, well, other officers on the scene knew it. But under this Court's decisions in Petutka and at U.S. v. Massenburg, the collective knowledge of all officers on the scene cannot be taken into account in determining whether probable cause exists. Your Honors, also let me say that we understand that Pine Sol can contain, a Pine Sol bottle can contain anything. However, when we're talking about probable cause, which is a higher standard than reasonable suspicion, we submit that the existence of two common household, two bottles of a common household product. They didn't know it was a common household product. Yes, Your Honor. I understand that. However, facially, the contents of the bottle matches the label. There was nothing on the bottle to indicate, there was no tears, there was nothing on the bottle to indicate that it had been replaced with something else. And if I may give some examples of things that might have constituted probable cause in this circumstance. If, for example, there were a whole bunch of empty bottles of Pine Sol at the PCP lab, that perhaps would have provided some connection that these common household products were actually being used in a suspicious way. That probably would have pushed the ball over the line into probable cause territory. Or if, for example, there was an unusual quantity of Pine Sol in the cars. If there were ten bottles of Pine Sol where the labels were ripped, or they were discolored, or whether the liquids were of varying colors. However, two bottles of Pine Sol is not a suspicious use of a common product. In closing, Your Honor, this record is devoid of everything that one would expect to see from an agent conducting a search, deciding whether the probable cause exists, and at the motion to suppress hearing, where counsel failed to establish policies. I see I'm out of time. May I finish just this sentence? Just this sentence, yes. Okay. Where the government failed to establish any impoundment policy, any inventory policy, any evidence of an exigent danger, or any timeline for what Agent Williams knew and when. Thank you, Your Honors. Thank you. We will ask the courtroom deputy to adjourn court, sign a die, and come down and recount.
judges: Allyson K. Duncan, Barbara Milano Keenan, Stephanie D. Thacker